IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| ALPS PROPERTY & CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 3:16CV276–HEH |
| BENNETT J. FIDLOW, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**
(Defendant's Motions to Quash Service of Process and
Set Aside the Clerk's Entry of Default)

This case involves an amalgam of interrelated lawsuits evolving from an unsuccessful attempt to purchase the rights to a film entitled "Birth of the Dragon."[1] The wake of this failed venture resulted in two separate lawsuits: one filed in the Superior Court for the City of Los Angeles, California, and the other in the United States District Court for the Eastern District of Virginia. This controversy is presently before the Court on Defendant Kylin Network (Beijing) Movie & Culture Media Co., Ltd.'s ("Kylin") Motions filed pursuant to Federal Rule of Civil Procedure 12(b)(5) to Quash Service of Process (ECF No. 34) and to Set Aside the Clerk's Entry of Default under Federal Rule of Civil Procedure 55(c) (ECF No. 37).

---

[1] "Birth of the Dragon" is a film about martial arts master Bruce Lee.

Following the submission of supporting memoranda with accompanying affidavits by both Plaintiff ALPS Property & Casualty Insurance Company ("ALPS") and Kylin, the Court heard oral argument on February 6, 2017.[2]

The central issue is whether Kylin was properly served by ALPS's process server in Los Angeles, California on August 10, 2016. Kylin contends that service was effected on the wrong individual and is thus invalid. ALPS counters that its process server verified the identity of the individual served as James Pang ("Pang"), Chief Executive Officer of Kylin. Alternatively, ALPS maintains that even if Pang was not the individual served, service was nonetheless effective on Kylin.

The lawsuit that was originally filed in Los Angeles alleged legal malpractice on the part of Bennett J. Fidlow ("Fidlow") in the negotiation of Kylin's acquisition of the rights to "Birth of the Dragon." Kylin maintains that Fidlow breached his professional, fiduciary, and ethical duties during the negotiation process by causing Kylin to enter into an agreement with an entity that apparently owned no legal rights to the film. As a result of Fidlow's allegedly inept representation, as part of the deal, Kylin paid $1 million to the incorrect entity, as well as an additional $1 million to an agent facilitating the ineffectual transaction. According to Kylin, Fidlow "engaged in further misconduct by placing a false and unauthorized lien on the motion picture at issue in Kylin's name, and then attempting to extort Kylin's litigation counsel after Kylin demanded that the lien be removed." (Kylin's Mem. Support Mot. Quash 2, ECF No. 35.)

---

[2] Defendants Bennett J. Fidlow and the law firm Schroeder Davis—the successor entity to the firm Schroeder Fidlow, with which Fidlow was previously associated—participated in oral argument through counsel.

2

In the lawsuit filed in this Court, ALPS seeks declaratory relief as to coverage on professional liability policies issued to Fidlow and his former law firm Schroder Davis. The dispute at issue involves the complaint in the declaratory judgment action.

As mentioned above, the service of process controversy occurred on August 10, 2016. However, on May 20, 2016, APLS sent a written request to Pang and Leo Shi Young ("Young"), Chief Executive Officer of Kylin Pictures International, Inc.[3] ("Kylin Pictures"), requesting them to waive service of process in the pending declaratory judgment case in Virginia. (Pl.'s Br. Opp'n Ex. 1, ECF No. 38-1.) According to ALPS, a copy of that Request for Waiver was also sent to Kylin's counsel, Michael E. Weinstein ("Weinstein"). (*Id.*)

In an attempt to resolve the malpractice action filed against Fidlow, the parties agreed to participate in mediation in Los Angeles on August 10, 2016. Prior to scheduling the mediation, Fidlow's attorney in the legal malpractice action confirmed with Kylin's counsel that Pang would be attending the mediation in person.[4] (Pl.'s Br. Opp'n Ex. 4 at ¶ 6, ECF No. 38-4.) Also attending the mediation was Young of Kylin Pictures, and Kylin's two California attorneys Weinstein and David Jonelis ("Jonelis"), along with a representative of ALPS, Fidlow's insurance carrier. (*Id.* at ¶¶ 10–12.)

Also present at the mediation site was Marco Toscano ("Toscano"), a private process server affiliated with Santoni Investigations. According to Toscano's declaration, he was present on August 10, 2016, at the location where he had been

---

[3] Kylin Pictures International, Inc. is a California corporation.
[4] Kylin contends that its participation in the mediation was conditioned on Plaintiff's agreement to not serve Kylin at the mediation session.

3

informed that the mediation would take place. (Pl.'s Br. Opp'n Ex. 7, ECF No. 38-7.) Toscano had a picture of an individual identified to him as Pang. At 9:00 a.m., he observed an elevator stop and four individuals alight. (*Id.*) Three of the individuals emerging from the elevator did not resemble the photograph he had been given of Pang. The fourth person "looked like" Pang. (*Id.*) According to his declaration, Toscano approached the individual resembling Pang and asked if he was in fact James Pang. (*Id.*) The person responded affirmatively. (*Id.*) Toscano then advised the individual that he had a summons and complaint for him. The individual Toscano identified as Pang thanked him and "stretched his hand to receive the Summons and Complaint and walked away. He went to talk to the attorneys who were checking in with the receptionist." (*Id.*) Toscano filed his return of service with the United States District Court on September 15, 2016, reflecting personal service on Pang Hong (aka James Pang) on August 10, 2016, at 9:00 a.m. (Return of Service, ECF No. 22.) The return also reflects that Toscano is a registered process servicer in good standing in the judicial circuit in which the process was served.

Later in the day on August 10, 2016, Weinstein sent an email to Timothy S. Beard ("Beard"), counsel for APLS, conveying the following message:

> While I was attending a mediation today, a process server appeared and handed a stack of documents to Mr. Leo Shi Young, who was attending the mediation with me. The documents appear to be a summons and complaint against Kylin Network (Bejing) Movie & Culture Company, LTD, among others. I have no idea why you would attempt to serve Mr. Young with this lawsuit as Mr. Young is not an officer or employee of this company. Nor is he authorized in any way to accept service on behalf of this entity. In the future, please direct your efforts elsewhere."

4

(Pl.'s Br. Opp'n Ex. 8, ECF No. 38-8.)

The following day, Beard responded: "[w]e have reviewed the facts and circumstances surrounding the service of process yesterday at 1900 Avenue of the Stars, Los Angeles, CA, and our conclusion is that service was valid and effective under Fed. R. Civ. P. 4." (*Id.*)

On September 22, 2016, the Superior Court of the State of California stayed proceedings in the malpractice action against Fidlow until January 18, 2017, to enable the dispute to be resolved in Richmond, Virginia, in accordance with the forum selection clause of Fidlow's retainer agreement with Kylin. (Stipulation of Facts Ex. 2, ECF No. 29-2.) Fidlow and his former law firm are situated in Richmond.

On November 28, 2016, ALPS filed with the Clerk of this Court a Request for Entry of Default against Kylin. (ECF No. 30.) The records of this Court reflecting no answer or responsive pleading being filed, the Clerk entered the default on December 1, 2016. (ECF No. 31.)

Based on their contention that the process server delivered the summons and complaint in this case to the wrong individual, Kylin now moves the Court to quash service and set aside the clerk's entry of default, pursuant to Fed. R. Civ. P. 12(b)(5) and 55(c). Although the Fourth Circuit has never directly addressed the issue, most reviewing circuits have adopted the general principle that a plaintiff bears the initial burden of establishing the validity of the service. *See Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 78 (D.C. Cir. 2014); *Valquez-Robles v. CommoLoCo, Inc.*, 757 F.3d 1, 4 (1st Cir. 2014); *Grand Entm't Group, Ltd. v. Star Media*

5

*Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993); *Carimi v. Royal Caribbean Cruise Line*, 959 F.2d 1344, 1346 (5th Cir. 1992); 4A Charles Alan Wright, Arthur R. Miller and Adam N. Steinman, *Federal Practice and Procedure* § 1083 (4th ed. 2015).

However, Circuit Courts have also consistently found that where a plaintiff files a signed return of service, the burden of proof shifts to the defendant. Therefore, "[a] signed return of service constitutes prima facie evidence of valid service 'which can be overcome only by strong and convincing evidence.'" *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993); *see also S.E.C. v. Internet Sols. for Bus., Inc.*, 509 F.3d 1161, 1165–66 (9th Cir. 2007) ("[A] defendant moving to vacate a default judgment based on improper service of process, where the defendant had actual notice of the original proceeding but delayed in bringing the motion until after entry of default judgment, bears the burden of proving that service did not occur."); *accord Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005); *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir. 1986).

Both parties agree that service of process on a foreign corporation is governed by Fed. R. Civ. P. 4(h). The rule prescribes several means by which such service may be effected. These include complying with "internationally agreed means of service . . . such as those authorized by the Hague Convention," Fed R. Civ. P. 4(f)(1), or by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). The Federal Rules of Civil Procedure also permit service by "following state law for serving a summons in an action brought in

courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

The law of the state in which service was made—California—provides that aside from the person designated as agent for service of process by a corporation, service can be made "[t]o the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Civ. Proc. Code § 416.10(b). California law also allows the service of process on a foreign corporation transacting business in California by personal service on "any officer of the corporation or its general manager in the state." Cal. Corp. Code § 2110.

Because the service of process in this case was adequate under the law of California and consistent with the requirements of Fed. R. Civ. P. 4(h)(1)(B), an analysis under the analogous law of Virginia is unnecessary. Despite Kylin's tenacious assertions to the contrary, the circumstantial evidence preponderates in Plaintiff's favor, irrespective of who was physically served with the complaint and summons.

It was certainly more than a coincidence that Young and Pang stepped off the elevator together on August 10, 2016, in route to the mediation with the attorneys for Kylin at their side. It is undisputed that they were attending a mediation to resolve a lawsuit filed by Kylin. Although the record is admittedly inexact as to the formal relationship between Kylin and Kylin Pictures, the records of the California Secretary of State reflect that Young and Pang share a common business address: 1801 Century Park,

E, Suite 1090, Los Angeles, California. The records, filed October 20, 2016, further reveal that Pang is the Chief Executive Officer of Kylin Pictures Inc., and Young serves as its Secretary, Chief Financial Officer, and member of the Board of Directors. (Pl.'s Br. Opp'n Ex. 3, ECF No. 38-3.)[5]

Although there is a dispute between the parties as to whether the process server served Pang or Young, it is clear that Weinstein was aware that one of them had been served with a summons and complaint against Kylin. (Pl.'s Br. Opp'n Ex. 8.) ALPS has therefore demonstrated by a preponderance of the evidence that Kylin was aware that they had been served by legal process. Moreover, based on the response of ALPS's counsel to Weinstein's email of August 10, 2106, disclaiming proper service of his client, ALPS considered service proper and the underlying lawsuit to be viable. (*Id.*) A reasonable attorney at that point in time would have taken steps to gather information and take responsive action. *See Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984) (When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process.).

Furthermore, California courts have construed the term "general manager" in California Civil Procedure Code § 416.10 quite broadly. "General manger" can even include the American subsidiary of a foreign company, despite the fact that they are

---

[5] In an earlier filing on January 20, 2016, with the California Secretary of State, a Statement of Information revealed that Pang and Young were on record sharing office space at 842 Corriente Point Drive, Redwood City, California. Again, the Statement of Information listed Pang as the Chief Executive Officer of Kylin Pictures, Inc., and Young as its Secretary, Chief Financial Officer, and member of the Board of Directors. (Pl.'s Br. Opp'n Ex. 2, ECF No. 38-2.) Pang and Young are also both officers of Kylin Pictures International, Inc., another California corporation. (*See* Pl.'s Br. Opp'n Ex. 5, ECF No. 38-5.)

separate legal entities. *See Falco v. Nissan N. Am., Inc.*, 987 F. Supp. 2d. 1071, 1075–76 (C.D. Cal. 2013); *Yamaha Motor Co., Ltd. v. Super. Ct. of Orange Cty.*, 94 Cal. Rptr. 3d 494, 498–501 (Cal. App. 2009) (citing *Cosper v. Smith & Wesson Arms Co.*, 346 P.2d 409 (1959)). The Supreme Court of California has determined that its service of process statutes are satisfied if service is effected on an agent "of sufficient character and rank to make it reasonably certain that the defendant will be appraised of the service made." *Cosper*, 346 P.2d at 413 (internal quotation marks and citations omitted). Of course, whether service of the agent can impute service on Kylin must be determined by the particular facts of this individual case. *Id.*

Whether a parent company can be properly served through its subsidiary tends to turn on two cardinal factors. First, whether the "parent corporation was foreign and otherwise not readily available for service within California." *United States ex rel. Miller v. Pub. Warehousing Co. KSC*, 636 F. App'x 947, 949 (9th Cir. 2016) (unpublished opinion). Second, the reviewing court considers whether there is a "sufficiently close connection" between the parent and subsidiary, such that the subsidiary is the parent's "general manager" in California. *Id.*

Aside from the presence of Kylin Pictures, Inc., there is no other evidence that Kylin maintains corporate offices in California. There is no evidence in the record indicating the frequency of Pang's presence in California, or his availability for service aside from the mediation on August 10, 2016. As discussed above, filings with the California Secretary of State reveal that Pang and Young have a close business

relationship.⁶ Therefore, even if Young was inadvertently served with process, the record at hand is sufficient to impute service on Kylin.⁷

Alternatively, Kylin maintains that if its Motion to Quash Service of Process is denied, the Court should find that there is good cause to set aside the Clerk of the Court's entry of Default. Federal Rule of Civil Procedure 55(c) enables a court to set aside an entry of default for good cause. Kylin's Motion to Set Aside the Default entered on December 1, 2016, is primarily premised on its contention that valid service of process is an indispensable prerequisite to the entry of default judgment. Kylin correctly argues that absent effective service of process, a court does not acquire personal jurisdiction over a party and consequently, any default judgment resulting is void. However, for the reasons discussed above, their pivotal argument fails.

Kylin next turns to the equitable considerations governing the Court's exercise of discretion in ruling on Rule 55(c) motions. Kylin is correct that this Court's analysis begins with the "strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). Unquestionably, as a general principle, the law disfavors default judgments. *Tazco, Inc. v. Dir., Office of Workers Comp. Program, U.S. Dep't of Labor*, 895 F.2d 949, 950 (4th Cir. 1990).

---

⁶ In his sworn declaration, Byron S. Hollis ("Hollis"), California counsel for Fidlow, states that he was present during the mediation session on August 10, 2016. Hollis further indicated that "[t]he mediator advised me that Mr. Pang was in attendance, along with Leo Shi Young, whom the mediator [the Hon. Robert W. Thomas] described as head of Kylin's U.S. operations." (Pl.'s Br. Opp'n Ex. 4, at ¶ 11, ECF No. 38-4.)

⁷ In his declaration, Young states that before the mediation, "a process server showed up and handed a stack of papers to me." (Kylin's Reply Br. Ex. 1, ECF No. 41-1.)

In reviewing motions to set aside default, the United States Court of Appeals for the Fourth Circuit has established an analytical framework founded on a number of equitable factors. In conducting such analysis, a district court "should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006); *see also Colleton Preparatory Acad.*, 616 F.3d at 417–20.

This lawsuit seeks declaratory judgment defining coverage in a policy issued by ALPS to Fidlow, and a law firm with which he was previously associated. That law firm, Schroder Fidlow, now known as Schroder Davis, is also a party to this action pertaining to coverage for potential claims arising from Fidlow's representation of Kylin in its attempt to acquire rights to the film "Birth of the Dragon." Kylin is an alleged third party beneficiary as a result of any indemnification rights it may have under the insurance policy issued by APLS. Kylin is therefore alleged to be a necessary party to any coverage action. *See* Va. Code § 55-22.

Distilled to its essence, ALPS seeks a declaration of no coverage based on its contention that Fidlow was aware of a potential claim by Kylin when he submitted an application for the insurance policy in controversy. Kylin rejoins that Fidlow was unaware at the time of application that he would be subject to a malpractice action as a result of his alleged mishandling of the movie rights acquisition. Therefore, Kylin contends, "Fidlow was under no duty to 'disclose' a malpractice claim which didn't

11

exist." (Kylin's Reply Br. 6, ECF No. 41.) Consequently, Kylin maintains that there is a material issue of fact in dispute as to whether it has a meritorious defense. Kylin emphasizes its belief that it is entitled to a hearing on the merits to resolve the dispute. However, Kylin has proffered no evidence demonstrating a likelihood of prevailing on the merits based on its nuanced parsing of the policy language.

Notwithstanding Kylin's claim of a meritorious defense, ALPS highlights two of the *Payne* factors which it contends should sway the Court's exercise of discretion. These are Kylin's failure to act with reasonable promptness and prejudice to the other parties. With respect to prejudice, counsel for both Fidlow and the Schroder Davis law firm advised the Court that they have reached a settlement agreement with ALPS. Central to the agreement is the concession by Fidlow and Schroder Davis that there is no coverage under the policy at issue. Counsel for both Fidlow and Schroder Davis represented to the Court during oral argument that their agreement was predicated on the entry of default against Kylin, which presumably brought the litigation to a close. The attorneys further represented that if the entry of default is set aside by the Court, it would have the effect of unwinding an agreement which required approximately one month to negotiate. Furthermore, both Fidlow and Schroder Davis would incur additional litigation expenses.

Secondly, the attorneys for ALPS, Fidlow, and Schroder Davis stress the lack of diligence on the part of Kylin and its attorney, Michael Weinstein, in neglecting to make reasonable inquiry about the summons and complaint served on August 10, 2016. In their view, it was a calculated strategic move rather than an act of inadvertence or

12

mistake. Weinstein's email of August 10, 2016, acknowledged that he, as Kylin's counsel, was aware that process had been served on either Pang or Young, both of whom were affiliated with the constellation of Kylin companies. Even if process was served on Young rather than Pang, responsibility for Kylin's inaction and consequent default apparently lies squarely with Kylin and Weinstein.[8] They apparently chose to hold their cards pending resolution of the California litigation. Furthermore, given the current posture of the case, where all other parties have settled their differences, it does not appear that any available sanctions could place this case on a reasonable course of unburdensome resolution.

In the final analysis, the four most directly relevant *Payne* factors weigh against setting aside the Clerk's entry of default in this case. Mindful of the Fourth Circuit's well enshrined "policy in favor of merits-based adjudication" and disfavor of default judgment, the immediate case differs in several respects from the typical case in which relief from the entry of default is warranted. *Colleton Preparatory Acad.*, 616 F.3d at 418.

Kylin has not convinced the Court that it has a plausible argument supporting insurance coverage, particularly when the other more directly affected parties—Fidlow and Schroder Davis—have conceded otherwise. Furthermore, this is not the commonly encountered case where a party or their attorney served with process is simply

---

[8] This is not to imply that Kylin's current counsel, Stephen P. Pierce and J. Chapman Petersen, are in any way responsible for Kylin's failure to timely respond to the complaint.

13

inadvertent or inattentive. Their inaction was a conscious choice, arguably a risky business decision. This is the rare disfavored case where the default must stand.

Based on the foregoing analysis, Kylin's Motions to Quash Service of Process and to Set Aside the Clerk's Entry of Default will be denied.

An appropriate Order will accompany this Memorandum Opinion.

                                                  /s/
                                    Henry E. Hudson
                                    United States District Judge

Date: Feb. 21, 2017
Richmond, VA